IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| TEEN CHALLENGE INTERNATIONAL USA, a Missouri corporation, | ) ) ) | CIVIL NO. 05-00463 DAE-BMK (Trademark) |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| JOHN D. ELLESON aka Reverend John D. Elleson; and CALVARY CHAPEL MINISTRIES, an Illinois eleemosynary corporation, dba Turning the Tide Ministries, | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| | ) | |
| JOHN D. ELLESON aka Reverend John D. Elleson; and CALVARY CHAPEL MINISTRIES, an Illinois eleemosynary corporation, dba Turning the Tide Ministries, | ) ) ) ) ) | |
| | ) | |
| Counterclaim Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| TEEN CHALLENGE INTERNATIONAL, USA, a Missouri corporation, | ) ) ) | |
| | ) | |
| Counterclaim Defendant. | ) | |
| _____ | ) | |

JOHN D. ELLESON aka Reverend )
John D. Elleson; and CALVARY )
CHAPEL MINISTRIES, an Illinois )
eleemosynary corporation, dba )
Turning the Tide Ministries, )
                         )
         Third Party Plaintiffs, )
                         )
   vs. )
                         )
THE GENERAL COUNCIL OF )
THE ASSEMBLIES OF GOD, a )
Missouri eleemosynary corporation, )
THOMAS TRASK, GEORGE )
NAGATO, DENNIS GRIFFITH, and )
JOHN CASTELLANI, )
                         )
         Third Party Defendants. )
_____ )

ORDER GRANTING THIRD PARTY DEFENDANTS THE GENERAL
COUNCIL OF THE ASSEMBLIES OF GOD, THOMAS TRASK, DENNIS
GRIFFITH AND JOHN CASTELLANI'S MOTION TO DISMISS THIRD
PARTY COMPLAINT OR FOR SUMMARY JUDGMENT AS TO THIRD
PARTY COMPLAINT; AND GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AGAINST DEFENDANTS' COUNTERCLAIM AND
GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
<u>ON PLAINTIFF'S COMPLAINT</u>

The Court heard Plaintiff's Motions, and Third Party Defendants'

Motion on November 20, 2006.  Colin Miwa, Esq., appeared at the hearing on

behalf of Plaintiff Teen Challenge International USA; Ronald Tongg, Esq.,
appeared at the hearing on behalf of Third Party Defendants George Nagato
("Pastor Nagato"), The General Council of the Assemblies of God ("The
Assemblies of God"), Thomas Trask, Dennis Griffith and John Castellani
(collectively "Third Party Defendants"); Dennis O'Connor, Jr., Esq., appeared at
the hearing on behalf of Defendant John D. Elleson ("Elleson") and Defendant
Calvary Chapel Ministries ("Calvary Chapel") (collectively "Defendants").  After
reviewing the motions and the supporting and opposing memoranda, the Court
GRANTS Third Party Defendants The General Council of the Assemblies of God,
Thomas Trask, Dennis Griffith and John Castellani's Motion to Dismiss Third
Party Complaint or for Summary Judgment as to Third Party Complaint, GRANTS
Plaintiff Teen Challenge's Motion for Summary Judgment Against Defendants'
Counterclaim and GRANTS Plaintiff's Motion for Partial Summary Judgment.

## BACKGROUND

Since at least 1967, The Assemblies of God have rendered spiritual
and material aid to juvenile delinquents.  (Plaintiff's Concise Statement of Facts
("CSF") Hammer Decl. ¶ 2.)  The Assemblies of God used the name "Teen
Challenge" for these services.  (Id.)  In 1984, The Assemblies of God formed a
Missouri corporation, named Teen Challenge International USA ("Plaintiff").

Plaintiff became the successor user of the name "Teen Challenge," with the permission and consent of The Assemblies of God, and has been a related company.  (Id. ¶ 3.)  Since its formation, Plaintiff has used the name "Teen Challenge" in connection with educational and outreach programs regarding the prevention of drug and alcohol use and gang affiliation.  (Pl.'s CSF Hodges Decl. ¶ 2.)  Since at least 1984, Plaintiff and The Assemblies of God have used the TEEN CHALLENGE mark and design to advertise and promote the teen outreach counseling services throughout the United States.  (Pl.'s CSF Hodges Decl. ¶ 3.)  According to Plaintiff, they have established good-will with respect to their TEEN CHALLENGE mark and design.  (Id. at ¶ 4.)

At some point, Elleson became a minister with The Assemblies of God.  Elleson held positions as Pastor of Wahiawa Assembly of God, the Presbyter of the Metro/Windward Section of the Hawaii Assemblies of God, and the Pastor and Director of Teen Challenge Hawaii.  (Elleson's CSF Ex. B.)  According to Elleson, Teen Challenge Hawaii was established to combat drug abuse and to provide a drug and alcohol rehabilitation program for young people who are addicted to drugs.  (Defs.' CSF Elleson Decl. ¶ 1.)

On July 29, 1999, Elleson and his wife Suzanne Elleson entered into an employment agreement with Teen Challenge Hawaii.  (Defs.' CSF Ex. A.)

Pursuant to the agreement, Elleson was to act as the Administrator for Teen Challenge Hawaii and was responsible for the management and operation of Teen Challenge Hawaii.  (Id.)  Although the contract states that Elleson is responsible for the operation and management of Teen Challenge Hawaii, Elleson states in his declaration that Calvary Chapel in fact operates Teen Challenge Hawaii and that it has all rights to the name Teen Challenge Hawaii, which it earned "by working with the people of Hawaii to reinvigorate the program and institute a successful drug and rehabilitation program."  (Defs.' CSF Elleson Decl. ¶¶ 2, 1.)  Elleson does not explain the connection between himself and Calvary Chapel.  According to Plaintiff, Calvary Chapel is an Illinois corporation controlled by Elleson.

On December 15, 1999, while a minister at The Assemblies of God, Elleson incorporated Teen Challenge of Hawaii, Inc. as a non-profit corporation. At this time, Teen Challenge Hawaii was affiliated with The Assemblies of God and Plaintiff, and as such, Plaintiff allowed Teen Challenge Hawaii to use the mark "TEEN CHALLENGE."  (Pl.'s CSF Hodges Decl. ¶ 5.)

Elleson and his wife Suzanne were investigated by the government for alleged misuse, fraud, and conversion of food stamps in connection with the Teen Challenge Hawaii program.  (Elleson Decl. ¶ 6; Third Party Defs.' Mot. to Dismiss at Ex. B).  They were subsequently indicted in or about June 2001.  (Third Party

5

Defs.' Mot. to Dismiss at Ex. B.)  On June 20, 2001, an article appeared in the

Honolulu Star-Bulletin in the "Kokua Line" section wherein a reader questioned

whether Teen Challenge was a legitimate group since she had read a previous Star-

Bulletin story about the minister and his wife being indicted for fraud.  (Pl.'s CSF

Ex. F.)  It is undisputed that on February 25, 2004, Elleson pled no contest to one

count of first-degree theft in the First Circuit Court of the State of Hawaii for the

charge that he fraudulently obtained welfare and food stamp benefits from the State

of Hawaii.

      In April 2002, Elleson caused Calvary Chapel to register the domain

name "www.teenchallenge.us."  (Pl.'s CSF Ex. G.)  Elleson did not inform The

Assemblies of God or Plaintiff that he registered this domain name.  (Pl.'s CSF

Hodges Decl. ¶ 6.)

      On June 11, 2002, the United States Patent and Trademark Office (the

"Office") issued a trademark registration of "TEEN CHALLENGE" to Plaintiff,

Trademark Registration No. 2,577,696.  (Pl.'s CSF Ex. B.)  The trademark was

issued to Plaintiff for education and outreach programs in the field of prevention of

drug and alcohol use and gang affiliation in Class 41 ("teen outreach counseling

services").  (Id.)  On December 17, 2002, the Office issued Plaintiff Trademark

Registration No. 2,661,577 for the service mark "TEEN CHALLENGE" and its

design image for the teen outreach counseling services.  (Pl.'s CSF Ex. C.)

By letter dated July 22, 2002, Elleson was informed that he was

placed on ministerial suspension from his positions, including his position of

Director of Teen Challenge Hawaii.  (Elleson's CSF Ex. B.)  In this letter, Pastor

Nagato states that Elleson's conduct on July 19th and his conversation with Brother

Jerald Ogg that evening:

> were such that it is necessary for the Presbytery to take
> action based on Article X, Section 3, f, g, h: 'Violations
> of Assemblies of God principles [,which] . . . may give
> cause for disciplinary action . . . . Among such causes for
> action shall be . . .
> f. A contentious or noncooperative spirit.
> g. An assumption of dictatorial authority over an
> assembly.
> h. An arbitrary rejection of district counsel.'

(Id.)

On July 30, 2002, by letter of same date, Pastor Nagato, as District

Superintendent of the Hawaii Assemblies of God, dismissed Elleson from the

fellowship, and removed him from his positions as Director of Teen Challenge

Hawaii, Pastor of Wahiawa Assembly of God, and Presbyter of the

Metro/Windward Oahu Section.  (Elleson's CSF Ex. B; Third Party Defs.' Mot. to

Dismiss Ex. C.)  In this letter, Pastor Nagato cited violations of "Assembly of God

principles" for Elleson's dismissal from the fellowship, which included the

principles cited above, in addition to "any moral or ethical failure," and "a failure

to represent our Pentecostal testimony correctly."  (Third Party Defs.' Mot. to

Dismiss Ex. C.)  Plaintiff claims this act ended the affiliation of Teen Challenge

Hawaii and Elleson with The Assemblies of God and Plaintiff.  Elleson argues

however, that Pastor Nagato had no authority to remove him from his position as

the Director of Teen Challenge Hawaii.

On or about July 29, 2002, Elleson, his wife, and others purportedly

voted to dissolve Teen Challenge Hawaii and transfer all of its property and assets

to Calvary Chapel.  (Pl.'s CSF Ex. H.)  Teen Challenge Hawaii was dissolved on

July 31, 2002.  (Pl.'s CSF Ex. J.)  Despite the dissolution of Teen Challenge

Hawaii and the termination of the affiliation of Teen Challenge Hawaii and Elleson

with Plaintiff and The Assemblies of God, Elleson and Calvary Chapel continue to

use the mark "TEEN CHALLENGE" without Plaintiff's permission and consent.

(Pl.'s CSF Hodges Decl. ¶ 8.)

On January 10, 2003, Plaintiff asked Defendants to stop using the

name "TEEN CHALLENGE" in any format.  (Pl.'s CSF Ex. I.)  On April 8, 2004,

Calvary Chapel registered the trade name "Teen Challenge Hawaii" with the State

of Hawaii, Department of Commerce and Consumer Affairs ("DCCA").  (Pl.'s

CSF Ex. M.)  On December 13, 2004, Elleson's ministry's website used the words "Teen Challenge Hawaii" and listed the website www.teenchallenge.us.  After a letter from Plaintiff's counsel requesting that Defendants cease and desist from using Plaintiff's trademarks, Plaintiff's trademarks were removed from Elleson's ministry's website.  (Pl.'s CSF Exs. O, P.)  However, the website still listed the www.teenchallenge.us website, still used the words "Teen Challenge Hawaii" and stated that a Honolulu office would be opening soon.  (Pl.'s CSF Ex. P.)

On July 26, 2005, Plaintiff filed a Complaint against Defendants for alleged infringement of a trademark and cybersquatting, i.e., the improper use of a website address in violation of the Lanham Act.  With their answer, Elleson and Calvary Chapel filed a Counterclaim and Third Party Complaint against Plaintiff and against Third Party Defendants.  Elleson and Calvary Chapel brought claims for: (1) conspiracy "to interfere with a contractual relationship enjoyed by Defendants in a tortious fashion to deprive Defendants of their livelihood, property and possessions"; (2) breach of employment contract between Elleson and "his church" to be employed as pastor of that church;  and (3) negligence.  (See Counterclaim and Third Party Compl.)

On April 5, 2006, Pastor Nagato filed a Motion to Dismiss Third Party Complaint or for Summary Judgment as to Third Party Complaint arguing that this

Court did not have jurisdiction over Elleson and Calvary Chapel's claims pursuant to the doctrine of ecclesiastical abstention.  This Court agreed and granted Pastor Nagato's motion on June 23, 2006.  On July 7, 2006, Third Party Defendants filed a Motion to Dismiss Third Party Complaint or for Summary Judgment also arguing that the doctrine of ecclesiastical abstention requires this Court to dismiss the Third Party Complaint.  On August 22, 2006, Plaintiff filed a motion for summary judgment against Elleson and Calvary Chapel's Counterclaims, likewise arguing that the Counterclaims against it should be dismissed pursuant to the doctrine of ecclesiastical abstention.  Plaintiff's August 22, 2006 motion also seeks  summary judgment on  Count I of its Complaint, for trademark infringement, and Count VII of its Complaint, for unfair and deceptive trade practices.  Elleson and Calvary Chapel filed an opposition on November 2, 2006, to both motions.  The opposition is identical to the opposition filed to Pastor Nagato's motion to dismiss.  Third Party Defendants filed their reply brief on November 9, 2006.  Plaintiff filed its reply brief on November 9, 2006.

<u>STANDARD OF REVIEW</u>

Third Party Defendants seek dismissal under Rule 12(b) of the Federal Rules of Civil Procedure.  Plaintiff seeks summary judgment under Rule 56 of the Federal Rules of Civil Procedure.  Since this Court has considered matters outside

the pleadings, both of these motions are treated as ones for summary judgment.

See Keas v. Tempe Tech. Inst., Inc., 110 F.3d 44, 46 (9th Cir. 1997); Anderson v.

Anemone, 86 F.3d 932, 934 (9th Cir. 1996).

> Rule 56 requires summary judgment to be granted when
> the pleadings, depositions, answers to interrogatories, and
> admissions on file, together with the affidavits, if any,
> show that there is no genuine issue as to any material fact
> and that the moving party is entitled to a judgment as a
> matter of law.

Fed. R. Civ. P. 56(c); see also Porter v. Cal. Dep't of Corr., 419 F.3d 885, 891 (9th

Cir. 2005); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  A

main purpose of summary judgment is to dispose of factually unsupported claims

and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to

demonstrate facts to establish what will be an essential element at trial.  See id. at

323.  A moving party has both the initial burden of production and the ultimate

burden of persuasion on a motion for summary judgment.  Nissan Fire & Marine

Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden initially

falls upon the moving party to identify for the court "those portions of the

materials on file that it believes demonstrate the absence of any genuine issue of

material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d

626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

       Once the moving party has carried its burden under Rule 56, the

nonmoving party "must set forth specific facts showing that there is a genuine

issue for trial"and  may not rely on the mere allegations in the pleadings.  Porter,

383 F.3d at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256

(1986)).  In setting forth "specific facts," the nonmoving party does not meet its

burden by making general references to evidence without page or line numbers.  S.

Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003); Local Rule

56.1(f) ("When resolving motions for summary judgment, the court shall have no

independent duty to search and consider any part of the court record not otherwise

referenced in the separate concise statements of the parties.").  "[A]t least some

'significant probative evidence'" must be produced.  T.W. Elec. Serv., 809 F.2d at

630 (quoting First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 290 (1968)).  "A

scintilla of evidence or evidence that is merely colorable or not significantly

probative does not present a genuine issue of material fact."  Addisu, 198 F.3d at

1134.

       When "direct evidence" produced by the moving party conflicts with

"direct evidence" produced by the party opposing summary judgment, "the judge

must assume the truth of the evidence set forth by the nonmoving party with

respect to that fact." T.W. Elec. Serv., 809 F.2d at 631.  In other words, evidence

and inferences must be construed in the light most favorable to the nonmoving

party.  Porter, 419 F.3d at 891.  The court does not make credibility determinations

or weigh conflicting evidence at the summary judgment stage.  Id.  However,

inferences may be drawn from underlying facts not in dispute, as well as from

disputed facts that the judge is required to resolve in favor of the nonmoving party.

T.W. Elec. Serv., 809 F.2d at 631.

## DISCUSSION

A.    Defendants' Counterclaims

Plaintiff and Third Party Defendants argue that this Court lacks

jurisdiction to decide Defendants' counterclaims based upon the doctrine of

ecclesiastical abstention.

The First Amendment prohibits civil courts from resolving church

disputes over property, polity, and church administration on the basis of religious

doctrine and practice.  Serbian Eastern Orthodox Diocese v. Milivojevich, 426 U.S.

696, 710 (1976); Jones v. Wolf, 443 U.S. 595, 602 (1979).  "[W]here resolution of

the disputes cannot be made without extensive inquiry by civil courts into religious

law and polity, the First and Fourteenth Amendments mandate that civil courts

13

shall not disturb the decisions of the highest ecclesiastical tribunal within a church

of hierarchical polity, but must accept such decisions as binding on them, in their

application to the religious issues of doctrine or polity before them." Serbian

Eastern Orthodox Diocese, 426 U.S. at 709.

Where no consideration of religious doctrine is involved, however, the

court may apply the "neutral principles of law" approach, which allows it to

interpret provisions of religious documents involving property rights and other

nondoctrinal matters, to the extent that the analysis can be done in purely secular

terms. See Jones, 443 U.S. at 602-03. This approach requires the court to

determine "property ownership by applying general principles of law, examining

local church charters, State statutes governing the holding of church property and

other pertinent documents." N. Am. Old Roman Catholic Church v. Bernadette,

253 Ill. App. 3d 278, 284-85 (1992); see also Gabriel v. Immanuel Evangelical

Lutheran Church, 266 Ill. App. 3d 456, 460 (1994).

The issue, thus, is whether Elleson and Calvary Chapel's

counterclaims can be resolved by applying neutral principles of law, or if this

Court would be required to delve into the religious principles and doctrine of the

Pentecostal church. As found in the Order granting Pastor Nagato's motion to

dismiss, this Court finds that it would be required to inquire into the principles and

14

doctrines of the church.  Indeed, Elleson was removed from his positions, including his position as director of Teen Challenge, based upon alleged violations of Assembly of God principles, such as having "a contentious or noncooperative spirit," a " moral or ethical failure," and/or failing "to represent . . . Pentecostal testimony correctly." (Defs.' CSF Ex. B; Third Party Defs.' Mot. to Dismiss Ex. C.)  Thus, in order to determine whether Plaintiff and/or Third Party Defendants breached a contract between Elleson and his church, tortiously interfered with such contract, or were negligent in dismissing him from his positions, this Court would certainly be required to interpret, analyze and apply those Assembly of God principles of which Elleson was accused of violating.  This is precisely the kind of inquiry that the First Amendment and Supreme Court cases prevent this Court from preforming.

Defendants' argument that the doctrine of ecclesiastical abstention does not apply to Plaintiff because Plaintiff is not a church is meritless in this case. Although Plaintiff itself is not a church, it was formed by the Assemblies of God and it allowed the Assemblies of God to use its name and provide the teen challenge services.  Plaintiff promoted its services through the church. Furthermore, Elleson held his position with teen challenge because he was also a minister and pastor with The Assemblies of God.  Moreover, Elleson was removed

from his position with teen challenge and simultaneously removed from his positions as minister and pastor with the related churches, for his alleged violations of Assembly of God principles.  Thus, this Court would certainly have to consider and interpret those principals to decide Elleson's counterclaims.  In sum, the church and Plaintiff are inextricably intertwined and the doctrine of ecclesiastical abstention applies.

Accordingly, the Court GRANTS Third Party Defendants The General Council of the Assemblies of God, Thomas Trask, Dennis Griffith and John Castellani's Motion to Dismiss Third Party Complaint or for Summary Judgment as to Third Party Complaint, and GRANTS Plaintiff Teen Challenge's Motion for Summary Judgment Against Defendants' Counterclaim.

B.    Count I of Plaintiff's Complaint

Plaintiff seeks a finding that Defendants are liable for trademark infringement under 15 U.S.C. § 1114(1), or alternatively, Defendants are liable for unfair competition under 15 U.S.C. § 1125(a), based upon their continued use of the mark "TEEN CHALLENGE" in connection with drug and alcohol outreach services for teenagers.

The trademark infringement statutes provides in pertinent part that:

> (1) Any person who shall, without the consent of the registrant--(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; . . . shall be liable in a civil action by the registrant for the remedies hereinafter provided.

15 U.S.C. § 1114(1)(a).

It is undisputed that Plaintiff is the registrant of the trademark "TEEN CHALLENGE."  It is also undisputed that Elleson used that mark on his ministries website and in registering the domain name www.teenchallenge.us.  It is further undisputed that Elleson used that mark without the consent of Plaintiff and that Elleson used that mark in connection with offering services for teens addicted to drugs and alcohol.  Additionally, it is undisputed that Plaintiff offers the same type of services for teenagers.  Finally, Defendants do not dispute Plaintiff's argument that Defendants' continued use of the words "Teen Challenge" in association with providing drug and alcohol rehabilitation services is likely to cause confusion, mistake or to deceive.

The court may determine, as a matter of law, the question of whether there is a likelihood of confusion.  Century 21 Real Estate Corp. v. Sandlin, 846

F.2d 1175, 1179 (9th Cir. 1988); <u>J.B. Williams Co. v. Le Conte Cosmetics, Inc.</u>,

523 F.2d 187 (9th Cir. 1975) (the trial court may determine as a matter of law

whether a likelihood of confusion exists).

> The test for determining likelihood of confusion, requires
> consideration of six factors: 1) the strength or weakness
> of the marks; 2) similarity in appearance, sound, and
> meaning; 3) the class of goods in question; 4) the
> marketing channels; 5) evidence of actual confusion; and
> 6) evidence of the intention of defendant in selecting and
> using the alleged infringing name.

<u>Century 21 Real Estate Corp.</u>, 846 F.2d at 1179.

Here, Plaintiff presented substantial evidence establishing a likelihood

of confusion.  First, the strength of Plaintiff's mark is established by its federal

registration of the mark TEEN CHALLENGE, and that it has used the mark since

at least 1984, and The Assemblies of God has used the mark since 1967.  <u>Id.</u> at

1179 ("Marks may be strengthened by . . . length of time in business, public

recognition . . . ).  Second, the marks used by both entities are nearly identical, as

both use the dominant lead words "Teen Challenge."  Defendants only added the

word "Hawaii" at the end and did not use all capital letters.  Thus, both marks are

similar in sound, appearance, and meaning.  <u>Id.</u>  (noting that "[t]he identical

dominant term "Century" is the lead word in each entity's name, which can foster

confusion.")  Third, both Elleson's ministry and Plaintiff offer the same type of

18

services  – outreach services for teenagers addicted to drugs and alcohol.

Brookfield Communications, Inc. v. West Coast Entertainment Corp., 174 F.3d

1036, 1055 (9th Cir. 1999) ("[r]elated goods are generally more likely than

unrelated goods to confuse the public as to the producers of the goods.").   Fourth,

both entities market their services through religious organizations.  These four

factors weigh heavily in favor of Plaintiff.

Plaintiff did not present any evidence to establish the fifth factor of

actual confusion.  The Kokua Line article produced by Plaintiff in an attempt to

establish actual confusion was published well before Plaintiff and The Assemblies

of God ended their affiliation with Elleson, and thus did not establish that Elleson

was using the name Teen Challenge at that time without Plaintiff's consent.

The final factor, however, also weighs in Plaintiff's favor.  As Elleson

was the Director of Teen Challenge, he was well aware of the marks it used, before

he registered Teen Challenge Hawaii and created the website teenchallenge.us.

See  Official Airline Guides, Inc. v. Goss, 6 F.3d 1385, 1394 (9th Cir. 1993 )

("[w]hen an alleged infringer knowingly adopts a mark similar to another's, courts

will presume an intent to deceive the public.").

As five of the six factors weigh heavily in Plaintiff's favor, Plaintiff

has established that there is a likelihood of confusion among consumers as to the

provider of the services known as "Teen Challenge."  Defendants did not refute any of this evidence or present any argument addressing whether or not there is a likelihood of confusion.  This Court thus finds that this evidence, along with Defendant's failure to dispute this argument, is sufficient to establish that there is no genuine issue of material fact that there is a likelihood of confusion.

Defendants' only response to Plaintiff's motion for summary judgment on its trademark infringement claim are statements in their factual section of their opposition that the name Teen Challenge Hawaii has been used for over thirty years in Hawaii without interference from the mainland, and that the trademark registered by Plaintiff in 2002 had been abandoned by The Assemblies of God long ago.  (Defs.' CSF Elleson Decl. ¶ 7.)  Defendants also state that Calvary Chapel has all rights to the name Teen Challenge Hawaii, which it earned by working with the people to reinvigorate the program.  (Defs.' CSF Elleson Decl. ¶ 2.)  The only evidence supporting these statements is Defendant Elleson's declaration.  Defendants did not produce any documentation establishing their right to the name "Teen Challenge," nor did they provide necessary specific facts such as the date that Calvary Chapel allegedly acquired such rights, or whether such right was transferred from Plaintiff, from Teen Challenge Hawaii or some other entity to Defendants.  Finally, Defendants did not present any argument or cite to

20

any law regarding Plaintiff's claims.  Elleson's self-serving declaration, with its

conclusory statements, is insufficient to create a genuine issue of fact and

overcome the evidence presented by Plaintiff, especially where all of the facts

required to establish a violation of 15 U.S.C. § 1114(1) are undisputed.  United

States v. Wilson, 881 F.2d 596, 601 (9th Cir. 1989) (self-serving and conclusory

declarations of fact are insufficient to raise a genuine issue of fact).

Accordingly, Plaintiff's motion for summary judgement on Count I of

their Complaint is GRANTED.

## C.    Count VII of Plaintiff's Complaint

Plaintiff argues that it is entitled to summary judgment on its claim for

unfair and deceptive trade practices under Haw. Rev. Stat. § 481-A-3.  The statute

provides in part that:

> a) A person engages in a deceptive trade practice when,
> in the course of the person's business, vocation, or
> occupation, the person: . . . (2) Causes likelihood of
> confusion or of misunderstanding as to the source,
> sponsorship, approval, or certification of goods or
> services; (3) Causes likelihood of confusion or of
> misunderstanding as to affiliation, connection, or
> association with, or certification by, another; . . . (12)
> Engages in any other conduct which similarly creates a
> likelihood of confusion or of misunderstanding.

Haw. Rev. Stat. § 481-A-3.  In order to determine whether there is a likelihood of confusion under this statute, the court should consider the following factors:

> 1) similarity of the marks; 2) similarity of the goods; 3) relationship between the parties' channels of trade; 4) relationship between the parties' advertising; 5) class of prospective purchasers of the products; 6) evidence of actual confusion; 7) defendant's intent in adopting its mark; and 8) strength of plaintiff's mark.

Carrington v. Sears, Roebuck & Co., 5 Haw. App. 194, 199-200, 683 P.2d 1220, 1226 (Haw. App. 1984).  These factors are substantially similar to the factors considered in determining the likelihood of confusion under the trademark infringement statute discussed above.

As discussed above, this Court has found that Plaintiff has established that a likelihood of confusion exists.  Accordingly, Plaintiff's motion for summary judgment on Count VII of its Complaint is GRANTED.

D.    Injunctive Relief

Plaintiff has requested that if this Court grants its motion that this Court enjoin Defendants' continuing infringement of its TEEN CHALLENGE mark.  15 U.S.C. § 1116(a) provides in part that this Court has the:

> . . . *power to grant injunctions*, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and

Trademark Office or to prevent a violation under
subsection (a), (c), or (d) of section 1125 of this title. . . .

(emphasis added).

Similarly, Hawaii Revised Statute section 481A-4 provides that:

(a) A person likely to be damaged by a deceptive trade
practice of another *may be granted an injunction* against
it under the principles of equity and on terms that the
court considers reasonable. Proof of monetary damage,
loss of profits, or intent to deceive is not required. Relief
granted for the copying of an article shall be limited to
the prevention of confusion or misunderstanding as to
source.

Plaintiff requests that the following injunction be imposed:

That Defendants Elleson and Calvary Chapel Ministries, and their
respective officers, directors, partners, agents, servants, employees,
attorneys, confederates and all persons acting for, with, by, through or
under it and/or them, and any others within its control or supervision,
and all others in active concert or participation with the above, be
enjoined during the pendency of this action and permanently
thereafter from directly or indirectly:

(1) Using, in any manner in connection with teen outreach counseling
services or any related services or goods the designation "Teen
Challenge" (alone or in conjunction with any other words, terms, or
designs), "Teen Challenge Hawaii", teenchallenge.us, or any other
designation, trade name, or trademark, or service mark that is
confusingly similar to Plaintiff's "TEEN CHALLENGE" and "TEEN
CHALLENGE" (and design);

(2) Using any false designation of origin or false descriptions that may or are likely to lead the trade or public or individual members thereof to believe that Defendants or Defendants' website are approved by, sponsored by, affiliated with, or are in any other way connected with Plaintiff;

(3) Using, directly or indirectly, "teenchallenge.us" as the Internet domain name for any of their websites;

(4) Engaging in any other activity constituting trademark infringement or false designation of origin under 15 U.S.C. §§ 1114(1) and 1125(a);

(5) Engaging in any other activity or conduct constituting a deceptive trade practice under Haw. Rev. Stat. § 481A-3;

(6) Assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities or conduct referenced to above.

Defendants did not address the possibility of an injunction or the terms of such proposed injunction in their opposition.  As this Court has found that Plaintiff has proven infringement of its trademarks and as Defendants did not present any argument or evidence regarding irreparable or other harm, or that when balancing the hardships, if any, it tips in their favor, this Court hereby GRANTS Plaintiff the injunctive relief sought.  The form of injunction is set forth by separate order filed herewith.

E.   <u>Attorneys' Fees and Costs</u>

Plaintiff argues that this case presents exceptional circumstances entitling it to an award of reasonable attorneys' fees and costs incurred in preparing the instant motion.

15 U.S.C. § 1117(a) provides that"

> [w]hen a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. . . . The court in exceptional cases may award reasonable attorney fees to the prevailing party.

Hawaii Revised Statute section 481A-4(b) also has a provision allowing this Court to award attorneys' fees and costs.  The statute provides that "Costs shall be allowed to the prevailing party unless the court otherwise directs. The court may award attorneys' fees to the prevailing party if . . . the party charged with a deceptive trade practice has wilfully engaged in the trade practice knowing it to be deceptive."  Haw. Rev. Stat. § 481A-4(b)(2).

Defendants did not address this issue in their opposition. Plaintiff, however, presented evidence that Elleson worked for teen challenge and The Assemblies of God prior to using the name teen challenge himself in connection with providing the same type of services. Elleson was thus certainly aware that the name was already in use and was used in connection with same type of services. Furthermore, Plaintiff sent Elleson a letter informing him that the name teen challenge had been trademarked and requested that he cease and desist from using the name. Despite this warning, Elleson continued to use this name. Accordingly, Plaintiff has provided evidence to this Court that establishes that Elleson wilfully engaged in using the name teen challenge, knowing it to be deceptive. Accordingly, Plaintiff is entitled to attorneys' fees and costs under Haw. Rev. Stat. § 481A-4(b)(2).

<u>CONCLUSION</u>

For the reasons stated above, the Court GRANTS Third Party Defendants The General Council of the Assemblies of God, Thomas Trask, Dennis Griffith and John Castellani's Motion to Dismiss Third Party Complaint or for Summary Judgment as to Third Party Complaint, and GRANTS Plaintiff Teen

Challenge's Motion for Summary Judgment Against Defendants' Counterclaim

and GRANTS Plaintiff's Motion for Partial Summary Judgment.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, November 21, 2006.



_____
David Alan Ezra
United States District Judge

Teen Challenge International USA v. Elleson, et al., Case No. CV 05-00463 DAE-BMK; ORDER GRANTING THIRD PARTY DEFENDANTS THE GENERAL COUNCIL OF THE ASSEMBLIES OF GODS, THOMAS TRASK, DENNIS GRIFFITH AND JOHN CASTELLANI'S MOTION TO DISMISS THIRD PARTY COMPLAINT OR FOR SUMMARY JUDGMENT AS TO THIRD PARTY COMPLAINT AND GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANTS' COUNTERCLAIM AND GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFF'S COMPLAINT